ERIE STORY, a Minor, by JOSEPH C. STORY, Her Father and Natural Guardian, v. PEOPLE'S MOTORBUS COMPANY OF ST. LOUIS, Appellant.—37 S. W. (2d) 898.

Division Two, April 14, 1931.

Carter, Jones & Turney and James E. Garstang for appellant.

Foristel, Mudd, Blair & Habenicht and Harry S. Rooks for respondent.

DAVIS, C.—This is an action against defendant, The People's Motorbus Company of St. Louis, a common carrier for hire (hereinafter called defendant), for damages for personal injuries averred to have been sustained by plaintiff while a passenger on a bus operated by it. The National Refining Company was also made a party defendant in the petition. Plaintiff tried the cause to a jury against both defendants, but the National Refining Company prevailed before the jury, and, as it is not a party to this appeal, we dismiss it from further consideration, except as to certain instructions given

by the court at its instance, of which defendant complains. The jury returned a verdict in favor of plaintiff and against defendant in the sum of $18,500, and defendant appealed from the judgment entered on the verdict.

Plaintiff's petition against defendant is predicated on the doctrine *res ipsa loquitur*, and against the National Refining Company on assignments of specific negligence. The evidence adduced in behalf of plaintiff warrants the finding that defendant, a common carrier of passengers for hire, operates motorbuses over a route along Southwest Avenue, a public street in the city of St. Louis. Southwest Avenue runs east-and-west, and at the place in question was sixty feet in width. Near the scene of the accident, Southwest Avenue, for a certain distance over the Missouri Pacific Railroad tracks, comprises a viaduct, which slopes from its apex to the east and west, respectively. To the south side of Southwest Avenue, there was located a White Rose gasoline filling station, with driveways to and from the street. To the north side of said highway, there was situated a warehouse of the National Refining Company, with a driveway into it from the street. We infer from the evidence that both the filling station and the warehouse were located to the east of the viaduct, but approximately adjoining it.

On the morning of November 18, 1926, plaintiff, who was then sixteen years of age and on her way to her work, boarded, some distance west of the viaduct, a motorbus of defendant, and from then until the collision of the bus with a telephone pole, located about fifty feet east of the filling station, she traveled on said bus as a passenger for hire. The collision occurred at about seven-thirty A. M. on said day. There was ice on Southwest Avenue at said time. While the bus was proceeding eastwardly down the east slope of the viaduct, or at least down grade, with plaintiff sitting in the right-hand front seat, plaintiff testified that she saw a truck pull out of the filling station on the south side of the street as they approached it; that she knew or felt that there was going to be an accident; that she arose from her seat, and, as she did so, the bus spun around and hit a telephone post, and she was thrown back across the seat; that as the truck crossed the path of the bus, she felt the bus slow up, the driver put the brakes on, and it began skidding on the ice; that, as she fell back, her shoulders struck the back part of the seat; that she gave her name to the conductor, alighted from the bus, went home on the next bus and went to bed, where she remained three weeks; that she did not see the truck until it turned out in front of her, going straight across the street; that she first saw the truck when it was in front of the bus, and did not see where it came from; that she did not know the distance from the bus to the truck, but it was closer than fifty feet; that she knew nothing about speed.

The only other witness for plaintiff who viewed the occurrence stated that the truck came from the south side of the street and went across, and that, as the truck came out of the drive into Southwest Avenue, out of the drive there and he busted right on the other side, the bus was about ten feet from the drive; that, coming down the hill, the bus driver applied the brakes to get out of the way of the truck and skidded; that the bus did not collide with the truck, but skidded clear around it, in a half circle, for fifty feet, struck a telegraph pole and snapped it in two pieces; that no signal was given by the truck; that the bus was on the right-hand side of the street, about three feet from the curb, and was not going very fast; that when he first saw the truck, it was about the middle of Southwest Avenue, and the bus was then about ten feet from it.

Defendant's evidence tends to show that the driver of the bus observed a truck proceeding east on Southwest Avenue, with the driver holding his hand out straight, when the bus was about twenty feet to the rear, and witness attempted to figure out the way he was going to turn; that the truck was practically stopped in the middle of the street, making a turn to the north; the bus was then going about five miles an hour and was proceeding about halfway between the center line of the street and the curb, and the truck was in front of the bus; the bus driver did not put on the brakes, but swerved slightly to the right, when he saw the truck was going to the left, and that is when it skidded; that the truck ran in Southwest Avenue only about thirty feet before it turned north, and the bus was then twenty feet to the rear; that the bus did not slacken speed.

A witness stated that when he first noticed the truck in the center of Southwest Avenue, the bus was about fifty feet from it; it skidded into a telegraph pole on the south side of the street and broke it off. Another witness stated that the pole was about fourteen inches in diameter and was hollow. Still another stated that, looking from the front of the bus, she noticed this truck pull out in front of the bus; she saw the bus was going to collide with it unless it swerved, that it did swerve and skidded into a telephone post; that the motorbus, when it began to skid, was fifteen feet from the truck, when she first saw it; that she did not see the truck driver give any signal.

**Evidence of National Refining Company.** The bus was seen following the truck along Southwest Avenue, and, while on the viaduct, the bus was sixty or seventy feet behind the truck. The bus was traveling at the rate of at least fifteen miles an hour on the icy street, going down grade. Another witness testified that the bus was twenty-seven and a half feet long and that the bus this side of the viaduct was about three bus-lengths behind the truck; that the bus, as it approached the scene of the accident, was going around twenty miles

an hour; that the truck was going at ten miles an hour, and, as it was about to make the turn, slowed down to five or six miles an hour; that the truck driver extended his right arm horizontally; that the bus gradually drew near the truck as it followed it down the street; that the driver of the truck signaled that he was going to turn to the left about seventy-five feet before he began to make the turn.

As we have concluded that the judgment must be reversed and the cause remanded because of erroneous instructions given to the jury, it is unnecessary to summarize the evidence relative to plaintiff's injuries.

I. Plaintiff (respondent) takes the position that the record affirmatively shows that defendant has not, in its abstract, included all of the evidence adduced at the trial and found in the bill of exceptions. However, the record before us shows that plaintiff filed an additional abstract of the record, and therein has abstracted and summarized such additional evidence as she has deemed pertinent to the issues. Consequently, we have before us all the evidence adduced at the trial that the parties deem relevant and material. In several late cases we have held that a respondent, by filing an additional abstract of the record, waives the right to complain. [Berry v. Railroad, 26 S. W. (2d) 988.]

II. The record shows that defendant refused to stand upon its demurrer to the evidence offered at the close of plaintiff's case, and thereafter submitted evidence which it thought tended to support its contentions. Therefore, the demurrer to the evidence searches all the evidence introduced in determining whether plaintiff made a submissible case, whether it be that of plaintiff or defendant or the National Refining Company. Moreover, in determining whether she made a submissible case, plaintiff is entitled to the benefit of any substantial evidence, and the most favorable inferences therefrom that tend in any manner to aid her.

III. The defendant asserts that the trial court erred in refusing to instruct the jury to find for it upon these postulates: (a) That the evidence shows that the cause of the accident was the act of the co-defendant, the National Refining Company, for which the defendant was in no way answerable, resulting that the doctrine *res ipsa loquitur* or presumptive negligence does not apply; (b) the skidding of an automobile in, and of itself is not evidence of negligence.

(a) Our concept of plaintiff's contention is that the doctrine *res ipsa loquitur* cannot be applied if, independent of each other, either

of the two defendants may be responsible for the injury caused. Seemingly, there is support for the position. [45 C. J. 1212, 1213, 1214.] However, it is unnecessary to analyze the cases cited, for we are committed to the doctrine that a petition states a cause of action that avers specific acts of negligence against one defendant and general negligence against a common carrier; and that, the petition stating a cause of action, competent, relevant and material proof adduced in conformity therewith is sufficient. [H,ulen v. Wheelock, 318 Mo. 502, 300 S. W. 479.] Moreover, a distinction seems to obtain in cases where a carrier is defendant. [See discussion of ELLISON, C., in Kapros v. Pierce Oil Corp., 25 S. W. (2d) 777, l. c. 782.] Reverting to the petition in the instant case, we find that it pleads general negligence as to defendant and specific negligence with respect to the National Refining Company. Consequently, with the relationship of carrier and passenger developed, in conjunction with the skidding of the bus and its collision with the pole, and an injury to plaintiff caused by an unusual occurrence, an inference arose that defendant had not exercised that high degree of care which the law places upon a carrier of passengers. [Price v. Met. Street Ry. Co., 220 Mo. 435, 119 S. W. 932; Stauffer v. Railroad, 243 Mo. 305, 147 S. W. 1032.]

(b) Defendant's contention that the mere skidding of a motor car is not in and of itself evidence of negligence appears to be supported by authority. [Heidt v. People's Motorbus Co., 284 S. W. 840; Williams v. Holbrook, 216 Mass. 239, 103 N. E. 633; Loftus v. Pelletier, 223 Mass. 63, 111 N. E. 712; Rango v. Fennell, 168 N. Y. Supp. 646; Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665.] But we find that the facts herein develop more than a mere skidding of the bus. As defendant refused to stand upon its demurrer to the evidence offered at the close of plaintiff's case, the demurrer at the close of the whole case then searches all the evidence adduced to determine whether plaintiff made a submissible case. The facts most favorable to plaintiff develop that the bus was proceeding down the east slope of the viaduct, with ice on the street, running at the rate of speed of twenty miles an hour, following a truck going at the rate of ten miles an hour, until it came within such a short distance of the truck which stopped to turn, that the bus itself was unable to stop without swerving, thus permitting the inference that the swerving, while running at the aforesaid speed, caused the bus to skid. An inference of negligence arises from the facts summarized, which plaintiff is permitted to use to her advantage. Defendant's negligence was a jury question, resulting that plaintiff made a submissible case.

IV. Defendant complains of four instructions given by the court to the jury at the intance of the National Refining Company, and to which defendant excepted. Two of them required a finding for the National Refining Company on hypothesized facts. The first instruction so required, if the jury found that its truck was proceeding eastwardly along Southwest Avenue from Columbia Avenue a distance of several hundred feet before turning into the plant of said company, and that the motor bus of defendant was to the rear of the truck as it so proceeded.

The second instruction also authorized a verdict for defendant, if the jury found that the truck of the National Refining Company did not emerge from the driveway on the south side of Southwest Avenue, as the bus was approaching said driveway, but that said truck at that time was moving eastwardly in front of said bus.

In submitting its case to the jury, the National Refining Company was entitled to instructions authorized by the law and the facts. And even though the instructions were incorrect, its co-defendant may not complain where the instructions do not affect such co-defendant as to its defenses. The instructions merely advised the jury that plaintiff was not entitled to recover if they found certain facts to be true. We cannot see that defendant in any way was affected or injured by said instructions, and its complaint as to them is untenable.

V. At the instance of the National Refining Company, the court instructed the jury that certain specifications of negligence alleged in plaintiff's petition were withdrawn from their consideration, because there was no evidence to sustain same. The fourth instruction withdrew the charge of negligence that the National Refining Company negligently and carelessly failed to stop its automobile before entering in front of and in the path of the motor bus of the defendant People's Motorbus Company, when, by the exercise of the highest degree of care, it would have done so. The fifth instruction withdrew the charge of negligence that the National Refining Company negligently and carelessly failed to keep a lookout either ahead or laterally, when it, by the exercise of the highest degree of care in so doing, would have discovered a bus of defendant People's Motorbus Company with plaintiff therein in time to have stopped its automobile and remained out of the path of said approaching bus, and thus and thereby have prevented injury to plaintiff.

Plaintiff's evidence was the only evidence in the record that tended to show that the truck came out of the driveway immediately in front of the bus, so that the bus was compelled to swerve to the

right to avoid colliding with it. More particularly, the evidence in her behalf tended to show that the truck, without signaling, emerged from the filling station drive, when the bus was traveling down the street three feet from the curb and not going very fast, and when the bus was very close, about ten feet from the drive. On further examination, plaintiff's witness further testified that the truck was about the middle of the street when he first saw it, and that the bus was then about ten feet from the truck, that he did not actually see the truck at any other time.

Notwithstanding that plaintiff's witness submitted different versions of what he saw, the weight and verity of his testimony was for the jury. Moreover, nothwithstanding that the chauffeur of the bus, defendant's witness, related a somewhat different story as to the occurrence, yet defendant was entitled to the benefit of any evidence in the record that tended to aid it. As plaintiff was entitled, from all the evidence adduced, to the most favorable inferences to determine whether she made a submissible case, it follows that if a phase of the evidence, even though submitted by plaintiff, tended to show that defendant was not negligent or responsible for plaintiff's injuries, it was entitled to have the jury consider and pass upon it. Even though plaintiff made a prima-facie case under the doctrine *res ipsa loquitur*, this fact did not forestall the jury's consideration of evidence tending to absolve defendant. [Baugher v. Gamble Const. Co., 26 S. W. (2d) 946.] As the record evidence tended to show that the truck emerged from the filling station driveway immediately in front of the moving bus, which fact required the chauffeur of the bus to turn or swerve it to the right to avoid a collision, thus resulting in the bus skidding into the pole, it constituted substantive evidence authorizing an inference that defendant was not negligent. Consequently, the action of the court in giving the aforesaid withdrawal instructions affected defendant's rights and constituted prejudicial error. [Hulen v. Wheelock, 318 Mo. 502, l. c. 514, 300 S. W. 479.]

The judgment is reversed and the cause remanded. *Cooley, C.,* concurs; *Westhues, C.,* not sitting.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.